|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | JS-6 |

### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 20-2001-JFW**<br>2:87-ap-02348-BR<br>2:87-bk-14518-BR | Date: July 9, 2020 |
| Title: | In Re: Charlotte Dial, et al<br>Charlotte Dial, et al. -v- Westpac Commercial Corporation, Inc. | |

**PRESENT:**

    **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly**<br>**Courtroom Deputy** | **None Present**<br>**Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:**<br>None | **ATTORNEYS PRESENT FOR DEFENDANTS:**<br>None |

**PROCEEDINGS (IN CHAMBERS):**   **ORDER AFFIRMING BANKRUPTCY COURT'S FEBRUARY 19, 2020 ORDER GRANTING MOTION FOR RECONSIDERATION OF NOVEMBER 5, 2019 ORDER**

    On February 28, 2020, Appellant Charlotte Breeze, a/k/a Charlotte Dial ("Breeze") filed an appeal from the United States Bankruptcy Court's February 19, 2020 Order Granting Motion for Reconsideration of its November 5, 2019 Order ("February 19, 2020 Order"). On April 30, 2020, Appellant filed her Opening Brief. On May 29, 2020, Appellee Westpac Commercial Corporation, Inc. ("Westpac") filed its Response Brief. On June 12, 2020, Breeze filed a Reply Brief. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's July 6, 2020 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

    **A.    The Stipulated Judgment Against Breeze**

    In 1987, Breeze and her then-husband Dick Dial filed bankruptcy pursuant to Chapter 7, and Westpac filed an adversary proceeding to prevent the discharge of a judgment[1] it had previously

---

[1] The original judgment was for $43,303.00.

obtained against Breeze in Los Angeles Superior Court. Westpac and Breeze subsequently resolved the adversary proceeding and entered into a Stipulation and Agreement ("Stipulation") on August 15, 1988. In the Stipulation, the parties agreed that Westpac would accept $15,000.00 in satisfaction of the judgment and that Breeze would make payments of $250.00 per month to Westpac and would advise Westpac of any changes of address. On August 8, 1989, the Bankruptcy Court entered a Judgment Pursuant to Written Stipulation ("Stipulated Judgment") for $15,052.50 in favor of Westpac. The Stipulated Judgment was renewed on March 24, 1999.

After the Stipulated Judgment was entered, Breeze admits that, without giving notice to Westpac, she remarried and traveled to Canada and Switzerland with her new husband. Breeze also admits that she did not make any payments on the Stipulated Judgment through 2003. In 2003, Westpac's private investigator found Breeze at her new address in California. Thereafter, Breeze agreed to resume making monthly payments on the Stipulated Judgment if Westpac would otherwise cease its efforts to enforce the Stipulated Judgment.

Although Breeze made payments for several years, she stopped making payments between 2007 and 2016. During this same time period, Breeze also refused to appear for debtor examinations and moved to an address where she claims she does not receive mail and, thus, would be unaware of any motions or orders against her. On February 2, 2009, Westpac again renewed the Stipulated Judgment.

By 2018, Westpac had resumed its efforts to enforce the Stipulated Judgment. Once Westpac resumed its efforts to enforce the Stipulated Judgment, Breeze's counsel advised Westpac's counsel that Westpac had failed to account for the payments made by Breeze from 2003 through 2007 when it renewed the Stipulated Judgment on February 2, 2009. Westpac's counsel admitted the error and filed a request to reduce the amount due on the Stipulated Judgment to reflect the payments made by Breeze and eliminate any erroneously charged interest.

### B. Breeze's Motion to Vacate the Stipulated Judgment

Because Westpac had resumed its efforts to enforce the Stipulated Judgment, on November 21, 2018, Breeze filed a Motion to Vacate the Stipulated Judgment based on the suspension of Westpac's corporate status by the California Franchise Tax Board ("FTB") and the California Secretary of State ("SOS") in 1991. On January 23, 2019, the Bankruptcy Court continued the hearing on the Motion to Vacate until March 19, 2019, stayed enforcement of the Stipulated Judgment to allow Westpac time to revive its corporate status, and ordered counsel to file a Joint Report two weeks prior to the hearing. In the March 5, 2019 Joint Report, Westpac's counsel stated that it had been in contact with the FTB regarding the necessary steps to revive its corporate status and was in the process of completing the first step, which consisted of preparing twenty-nine years of tax returns. Based on the March 5, 2019 Joint Report, the Bankruptcy Court continued the hearing on Breeze's Motion to Vacate until June 5, 2019 and ordered counsel to file a Joint Report two weeks prior to the hearing. In the May 21, 2019 Joint Report, Westpac's counsel stated that the necessary tax returns had been filed on March 12 and 15, 2019, and that Westpac was waiting for the FTB to inform it of the balance due, which would take approximately five months. Based on the May 21, 2019 Joint Report, the Bankruptcy Court continued the hearing until August 27, 2019, and ordered counsel to file a Joint Report two weeks prior to the hearing. In the August 13, 2019 Joint Report, Westpac's counsel advised that the FTB had informed it of the

balance due and that Westpac had made an offer in compromise and was waiting to hear from the FTB whether its offer would be accepted.  At the August 27, 2019 hearing, the Bankruptcy Court expressed frustration at Westpac's delay in reviving its corporate status, but continued the hearing until October 22, 2019, and ordered counsel to file a Joint Report by October 15, 2019.  In addition, the Bankruptcy Court ordered Westpac to file written proof that it was in good standing in California and that it was no longer suspended or forfeited by October 15, 2019.  The Bankruptcy Court also stated that the October 15, 2019 deadline for Westpac to file written proof would not be extended and that if Westpac failed to file written proof by October 15, 2019, Breeze's Motion to Vacate the Stipulated Judgment would be granted at the hearing on October 22, 2019.

On October 9, 2019, the FTB issued a "limited purpose revivor," which Bob Schmitt ("Schmitt"), a Specialist in the Accounts Receivable Management Division of the FTB, advised Westpac would be sufficient to restore Westpac's corporate status.  On October 15, 2019, Westpac filed the FTB's limited purpose revivor with the Bankruptcy Court and the parties filed a Joint Report.  In the October 15, 2019 Joint Report, Breeze argued that the limited purpose revivor was insufficient to cure Westpac's suspension because Westpac needed a certificate of good standing from the SOS in addition to the FTB's revivor.  At the October 22, 2019 hearing, the Bankruptcy Court agreed with Breeze that Westpac had failed to cure its suspension because although it had obtained a revivor from the FTB, it had failed to receive a certificate of good standing from the SOS.  As a result, on November 5, 2019, the Bankruptcy Court entered an order granting Breeze's Motion to Vacate.

   **C.** **Westpac's Motion for Reconsideration**

On November 15, 2019, Schmitt, the FTB Specialist, informed Westpac that the issuance of a limited purpose revivor and his advice that the limited purpose revivor would be sufficient to restore Westpac's corporate status were in error.  Schmitt informed Westpac that he should have issued a conditional revivor, which would have enabled Westpac to obtain a certificate of good standing from the SOS.  On November 19, 2019, Westpac obtained a signed declaration from Schmitt regarding the FTB's acknowledgment that it had issued the wrong revivor and given Westpac incorrect advice.  In addition, after the FTB issued the correct revivor, Westpac was able to promptly cure its suspensions with both the FTB and the SOS in one business day.

On November 21, 2019, based on Schmitt's declaration, Westpac brought a Motion for Reconsideration pursuant to Local Rule 7-18, asking the Bankruptcy Court to reconsider its November 5, 2019 Order granting Breeze's Motion to Vacate the Stipulated Judgment.  Specifically, Westpac argued in its Motion that although the FTB's "limited purpose revivor" stated that Westpac was "revive[d] . . . to good standing for the limited purpose of prosecuting [the *WCC v. Breeze*] action," the FTB now acknowledged that a "limited purpose revivor" would not restore Westpac to good standing and its prior advice was erroneous.  Westpac argued that this was new evidence that warranted reconsideration and that the FTB's former advice – that a limited revivor would be sufficient – appeared consistent with the applicable California Revenue & Taxation statute and, thus, Westpac should not be faulted for relying on the FTB's advice.  In her Opposition to the Motion to Reconsider, Breeze argued that, even though Westpac now has obtained the correct FTB revivor, Westpac should not be excused from its failure to obtain a certificate of good standing from the SOS before the October 15, 2019 deadline set by the Bankruptcy Court.  In its Reply, Westpac argued that because the FTB had issued the wrong form of revivor, it would have

been impossible to obtain a certificate of good standing from the SOS before the October 15, 2019 deadline.

On January 28, 2020, the Bankruptcy Court conducted an exhaustive hearing on Westpac's Motion for Reconsideration. The Bankruptcy Court summarized the grounds for reconsideration as follows:

> The issue is really very narrow, as I understand it. You have a declaration from the gentleman from the Franchise Tax Board . . . Schmi[t]t . . . [W]hat's really going on, the question . . . whether or not something happened, really that was beyond your control. It happened after the October date that I set a deadline to just sort of [say] enough was enough. And what . . . you filed and under penalty of perjury the declaration of Mr. Schmi[t]t . . . said basically the following, as I understand it: that he made an error; that the reviver that [he] gave your side was in error; and that one that he gave you would not have satisfied – could not have satisfied the Secretary of State. And so he says . . . in his declaration that was in error and he's now corrected that error. And had he made it right the first time within a coup – a day or two you could have indeed gotten the Secretary of State to revive it and we wouldn't be here today . . .

Breeze argued at length that the Motion for Reconsideration should be denied because Westpac had not cured its suspension by the SOS by the October 15, 2019 deadline set by the Bankruptcy Court. However, the Bankruptcy Court agreed with Westpac that Breeze was insisting on something that would have been impossible: "the type of reviver they got from Mr. Schmi[t]t, the original one, would not have allowed them to be – for our purposes would not have lifted [the suspension]." The Bankruptcy Court also rejected Breeze's argument that if Westpac had waived its right to negotiate the balance due to the FTB it could have easily obtained a revivor by the October 15, 2019 deadline. In addition, the Bankruptcy Court rejected Breeze's argument that the Motion for Reconsideration should have been brought under Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedure 9023 and, thus, was untimely. On February 18, 2020, the Bankruptcy Court entered an order granting the Motion for Reconsideration.[2]

## II.     Issues on Appeal

Breeze presents the following issues on appeal:

1.      Did the Bankruptcy Court erroneously grant the February 18, 2020 Order?[3]

---

[2]  The judgment against Breeze was renewed in the amount of $95,806.52 as of October 23, 2019, plus post-judgment interest accruing from October 23, 2019.

[3]  Although Breeze presents eight issues on appeal, they all relate to and depend on Breeze's argument that the Bankruptcy Court erred in granting Westpac's Motion for Reconsideration on February 19, 2020, and, in essence, that the Bankruptcy Court did not properly weigh the evidence presented by the parties.

      2.     Did the Bankruptcy Court erroneously conclude that it was immaterial that Westpac and its counsel had violated the Court's September 13, 2019 Order by failing to submit written proof to the Court – prior to the October 15, 2019 deadline set in the Court's September 13, 2019 Order and prior to the October 22, 2019 continued hearing on Breeze's Motion to Vacate – that Westpac had revived its corporate status with the SOS by addressing Westpac's suspension by the SOS on June 14, 1991, *i.e.*, a suspension that was independent of and prior to Westpac's FTB Suspension on July 1, 1991?

      3.     Did Westpac's filing of a Statement of Information with the SOS on December 9, 2019 (*i.e.*, more than a year after Breeze's Motion to Vacate was filed) actually prove that Westpac and its counsel had failed to act diligently to take action to remedy the SOS suspension before the October 15, 2019 deadline?

      4.     Did the Bankruptcy Court erroneously conclude that Westpac and its counsel actually and reasonably believed that the filing of the limited purpose revivor with the Court on October 15, 2019, was proof that Westpac was in good standing with the SOS for all purposes, given that (a) the limited purpose revivor did not address the SOS suspension; (b) the limited purpose revivor did not state anything to the effect that Westpac "is in good standing in California and is no longer suspended or forfeited," as required by the Court's September 13, 2019 Order; (c) the "limited revivor" under the limited purpose revivor had no effect because it only was prospectively worded to authorize prosecuting the adversary proceeding, rather than stating that it validated prior actions by Westpac, as assignee, in the adversary proceeding; (d) the limited purpose revivor also had no effect because it "revive[d] [Westpac] to good standing for the limited purpose of prosecuting this action," but it did not revive Westpac for the purpose of the assignee Slates, P.C., prosecuting the adversary proceeding on and after January 1, 1990 (*i.e.*, the supposed retroactive "effective" date of the assignment to Slates, P.C.), or even after March 19, 2018 (when the Acknowledgment of Assignment was filed); and (e) the non-attorney FTB employee who provided Westpac with the limited purpose revivor had no apparent expertise on reviving Westpac from its prior SOS suspension on June 14, 1991, as opposed to its FTB suspension on July 1, 1991?

      5.     Did the Bankruptcy Court erroneously conclude that Westpac and its counsel presented new evidence of a "conditional revivor" that could not have been filed by them by the October 15, 2019 deadline set by the Court or prior to the October 22, 2019 continued hearing on Breeze's Motion to Vacate, given that the "conditional revivor" of Westpac was not authorized under the language of California Revenue and Taxation Code § 23305b, so it could have not been provided prior to that hearing anyway?

      6.     Did the Bankruptcy Court erroneously conclude that Westpac and its counsel presented evidence in support of its Motion for Reconsideration, which could not have been previously presented by them – prior to the Court's October 15, 2019 deadline and prior to the October 22, 2019 continued hearing on Breeze's Motion to Vacate – in the exercise of reasonable diligence by Westpac and its counsel in order to address Westpac's FTB suspension on July 1, 1991, given that Westpac could have paid outstanding taxes, penalties and interest to obtain an unconditional revivor from the FTB instead of attempting to negotiate a discounted payment through the "offer in compromise" procedure?

      7.     Did Westpac and its counsel fail to act diligently after the October 22, 2019 continued

hearing on the Motion to Vacate to obtain the allegedly necessary "conditional revivor" from the FTB, given that they did not even contact the FTB about it until approximately November 13, 2019?

8. Did Westpac and its counsel fail to act diligently after the October 22, 2019 continued hearing on the Motion to Vacate by waiting until December 9, 2019, to file a Statement of Information with the SOS to address Westpac's SOS suspension?

### III. Legal Standard

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions. *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

On appeal, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Federal Rules of Bankruptcy Procedure 8013. A district court reviews a bankruptcy court's factual findings "'under the clearly erroneous standard and its conclusions of law de novo.'" *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 787 F.2d 1352, 1357 (9th Cir. 1986) (*quoting Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)). "Mixed questions of law and fact are reviewed de novo." *Beaupied v. Chang* (*In re Chang*), 163 F.3d 1138, 1140 (9th Cir.1998). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) *(quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Savage v. Greene* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. at 574. Finally, the bankruptcy court's granting or denial of a motion for reconsideration is reviewed for an abuse of discretion. *See Arrow Elecs., Inc. v. Justus* (*In Re Kaypro*), 218 F.3d 1070, 1073 (9th Cir.2000).

### IV. Discussion

#### A. The Motion for Reconsideration Was Timely.

Westpac brought its Motion for Reconsideration pursuant to Local Rule 7-18.[4] However, Breeze argues that Westpac could only seek reconsideration of the Bankruptcy Court's November 5, 2019 Order pursuant to Federal Rule of Civil Procedure 59(e), as incorporated by Federal Rule of Bankruptcy Procedure 9023, and that Westpac's Motion for Reconsideration was untimely under Rule 59(e). During the hearing, the Bankruptcy Court rejected Breeze's argument that the Motion for Reconsideration could only be brought pursuant to Rule 59(e).

Although the Bankruptcy Court did not elaborate on why it rejected Breeze's argument that the Motion for Reconsideration could only be brought pursuant to Rule 59(e), this Court concludes that the time limitations of Rule 59(e) and Federal Rule of Bankruptcy Procedure 9023 did not apply to Westpac's Motion for Reconsideration because the November 5, 2019 Order was not a final order or judgment. *See United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000) (holding that if a motion for reconsideration is brought before judgment or final, appealable order is entered, the time "limitation of Rule 59(e) does not apply"); *see also Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989) ("Courts have inherent power to modify their interlocutory orders before entering a final judgment"). In addition, even if the November 5, 2019 Order had been a final order or judgment (and, thus, the Motion for Reconsideration would have been untimely pursuant to Rule 59(e)), the Bankruptcy Court could still have construed Westpac's Motion for Reconsideration as a motion for reconsideration pursuant to Rule 60(b), and a motion pursuant to Rule 60(b) would have been timely.[5] *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1463 n. 35 (9th Cir. 1992) ("An untimely motion for reconsideration is construed as a motion based on Fed.R.Civ.P. 60(b)").

Accordingly, the Court affirms the Bankruptcy Court's determination that Westpac's Motion for Reconsideration was timely.

> **B.      The FTB's Acknowledgment That It Issued the Wrong Revivor Qualified as New Evidence**.

In this case, Breeze argues that Westpac's Motion for Reconsideration should have been denied because Westpac failed to present any new evidence. Specifically, Breeze argues that all of the evidence presented by Westpac existed and was available prior to October 15, 2019. However, the Court concludes that the Bankruptcy Court correctly determined that Westpac had presented new evidence and, thus, grounds for reconsideration existed. At the time of the October

---

[4]     Local Rule 7-18(a) provides in part:

A motion for reconsideration of the decision on any motion may be made . . . on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision.

[5] Rule 60(b) permits relief from judgment where the movant can demonstrate "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" or "any other reason that justifies relief."

15, 2019 deadline, the FTB had provided an erroneous limited purpose revivor that was insufficient to obtain a certificate of good standing from the SOS.  However, Westpac did not discover the FTB's error until after the October 15, 2019 deadline, and, thus, Westpac's ability to fully revive its corporate status was impossible and beyond Westpac's control.  *See, e.g., Guido v. L'Oreal, USA, Inc.*, 2012 WL 2458118 at *2 (C.D. Cal. June 25, 2012) (on a motion pursuant to Local Rule 7-18, granting reconsideration of the court's prior order where new evidence received three days before hearing but not reviewed until after hearing); *see also United States ex rel. Brown v. Celgene Corp.*, 2014 WL 12588296 at *1 n.2 (C.D. Cal. Mar. 21, 2014) (holding that the government's decision not to intervene changed circumstances and supported reconsideration under Local Rule 7-18).

      In addition, the Court finds Breeze's additional arguments that Westpac should have discovered that the FTB has issued the wrong revivor in October 2019 unpersuasive.[6]  For example, Breeze argues that Schmitt might have issued the correct revivor in October 2019 if Westpac had been more persistent and aggressive in its interactions with him.  However, Breeze's argument is nothing more than speculation and not based on any facts or law.  *See, e.g., Employers Ins. of Wausau v. California Water Service Co.*, 2008 WL 3916096 at *13 (N.D. Cal., Aug. 25, 2008) (rejecting argument regarding what "may have" happened because "it is entirely speculative").  Breeze also argues that Westpac "waited until the last minute to obtain the [limited purpose revivor] on October 9, 2019."  However, as the record reflects, Westpac's counsel, Kevin Hoang ("Hoang") made numerous telephone calls and sent numerous emails to the FTB between August 2019 and October 2019 reminding the FTB of the October 15, 2019 deadline.  Unfortunately, the FTB did not issue the limited purpose revivor until October 9, 2019, and it was not received by Westpac until October 11, 2019.  Thus, Westpac received the erroneous limited purpose revivor only a few days before October 15, 2019 deadline.  Moreover, Breeze argues that Westpac should have waived its right to negotiate with the FTB regarding the outstanding balance due to the FTB.  However, Breeze made this same argument to the Bankruptcy Court, which found it unpersuasive, and Breeze fails to offer any explanation why the Bankruptcy Court's rejection of that argument was in error.  *See, e.g., Anderson*, 470 U.S. at 573 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").  Finally, Breeze argues that Westpac failed to make any effort to obtain Schmitt's declaration regarding the FTB's error prior to the October 22, 2019 hearing.  However, it would

---

    [6]  Breeze's argument that the Bankruptcy Court erred in "conclud[ing] that it was immaterial that Westpac and its counsel had violated the Court's September 13, 2019 Order by failing to submit written proof to the Court" prior to the October 2019 deadline is also unpersuasive.  The Bankruptcy Court did not conclude that Westpac's failure to provide written proof that it was a corporation in good standing with the FTB and the SOS was "immaterial."  Instead, the Bankruptcy Court concluded that Westpac had failed to submit the necessary evidence before the October 15, 2019 deadline due to circumstances beyond its control, specifically that the FTB had issued the wrong revivor.  Moreover, even if the failure to submit the necessary evidence had been due to Westpac's mistake and not the FTB, it was still within the Bankruptcy Court's power to grant Westpac relief from its mistake.  *See, e.g., Roche v. Lithia Motors, Inc.*, 2017 WL 6888244 at *1-*2 (C.D. Cal. Jan. 12, 2017) (granting Rule 60(b) motion after failure to timely file class certification motion); *Hamilton v. Hart*, 2017 WL 272090, at *2 (E.D. Cal., Jan. 19, 2017) ("A rule prohibiting a judge from modifying the deadlines set in her own prior order would undermine the court's fundamentally necessary power to control its own docket").

have been impossible for Westpac to obtain Schmitt's declaration regarding the FTB's error prior to the October 22, 2019 hearing because the FTB apparently did not become aware, and did not inform Westpac, of its error until November 15, 2019, which was well after the October 22, 2019 hearing date.

Accordingly, the Court affirms the Bankruptcy Court's determination that the FTB's acknowledgment that it had issued the wrong revivor to Westpac after the October 22, 2019 hearing constituted new evidence that supported Westpac's Motion for Reconsideration.

### C.  Attempting to Obtain a Certificate of Good Standing from the SOS Without First Obtaining the Correct Revivor from the FTB Would Have Been Futile.

In opposing the Motion for Reconsideration, Breeze argued that because Westpac failed to obtain a certificate of good standing from the SOS prior to the October 15, 2019 deadline, the FTB's failure to issue the correct revivor prior to the deadline was irrelevant. Breeze argued that even if the FTB had issued the correct revivor prior to the deadline, Westpac's suspension would not have been cured by the deadline because Westpac failed to file the statement of information necessary to obtain a certificate of good standing from the SOS. However, the Bankruptcy Court concluded that any attempt by Westpac to obtain a certificate of good standing from the SOS prior to the FTB issuing the correct revivor in November 2019 would have been futile.

In this case, the Court agrees with the Bankruptcy Court's conclusion that any attempt to obtain a certificate of good standing from the SOS would have been futile.[7] In his declaration, Schmitt stated that because Westpac had not received the correct revivor from the FTB, "it would not be possible for it to obtain a certificate showing it as active, even if it filed a current information statement [with the SOS], because it would still be suspended according to the FTB." In addition, Schmitt's statement is consistent with California Corporations Code § 2205(d), the statute governing Secretary of State certificates, which provides:

> Upon the filing of a statement [of information] . . . by a corporation that has suffered suspension pursuant to this section [regarding suspension by the [Secretary of State], the Secretary of State shall certify that fact to the Franchise Tax Board and the corporation may thereupon be relieved from suspension unless the corporation is held in suspension by the Franchise Tax Board by reason of [the applicable sections of] the Revenue and Taxation Code.

Thus, as the Bankruptcy Court concluded, Westpac had to obtain the proper FTB revivor before the SOS would issue a certificate of good standing. In fact, during the hearing on the Motion for Reconsideration, Breeze's counsel conceded that any attempt by Westpac to apply for a certificate of good standing from the SOS would have been futile, stating that Westpac "couldn't have got a

---

[7] In addition, the Court finds unpersuasive Breeze's argument that Westpac failed to act diligently to remedy its suspension with the SOS because Westpac waited until December 9, 2019 to file a statement of information with the SOS. As the Bankruptcy Court concluded, the SOS's suspension could not be cured until the correct revivor was issued by the FTB.

certificate of good standing because it still would have shown an FTB suspension."[8]

Accordingly, the Court affirms the Bankruptcy Court's determination that any attempt by Westpac to obtain a certificate of good standing from the SOS without first obtaining the correct revivor from the FTB would have been futile.[9]

## V.     Conclusion

For all the foregoing reasons, the Bankruptcy Court's February 19, 2020 Order is **AFFIRMED**, and this appeal is dismissed with prejudice.

IT IS SO ORDERED.

---

[8] In addition, the Court finds Breeze's argument that the Bankruptcy Court mistakenly believed that the proper FTB revivor would have automatically cured the SOS suspension unpersuasive. In his declaration, Schmitt clearly stated that he "should have issued a conditional revivor on October 9, 2019, which would have given Westpac sufficient time to also obtain a revivor from the Secretary of State." The Bankruptcy Court read that portion of Schmitt's declaration several times during the hearing and made it clear that Schmitt's statement was consistent with the Bankruptcy Court's understanding of the steps necessary for Westpac to obtain a certificate of good standing from the SOS.

[9] In his declaration, Schmitt refers to the second revivor issued to Westpac as a "conditional revivor." Breeze argues that a "conditional revivor" is not permitted pursuant to California Revenue and Taxation Code § 23305b. However, Breeze's argument appears to be based solely on the fact that the term "conditional revivor" is not used in Section 23305b. Breeze does not argue that the wording of the second revivor is in error or not permitted pursuant to Section 23305b. Breeze also does not dispute that the second revivor issued to Westpac would allow it to obtain a certificate of good standing from the SOS and cure its suspensions with both the FTB and SOS. Accordingly, the Court finds Breeze's argument unpersuasive.